## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| v. | : | NO. 20-86 |
| | : | |
| **RICHARD BRYANT** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                         November 13, 2020

      Following an extensive evidentiary hearing where we evaluated the credibility of police officer witnesses and admitted exhibits, we found an arresting officer's stated reason for searching Richard Bryant's car without a warrant on January 11, 2018 lacked credibility. We further found the United States' attempt to justify this search as a *Terry* frisk of a vehicle unpersuasive and unsupported by the evidence. We suppressed the fruits of the search in our October 30, 2020 Order and supporting Memorandum with Findings of Fact and Conclusions of Law. We found the arresting officer's claims a "strong odor of marijuana" warranted the search lacked credibility because his partner sitting in Mr. Bryant's car could not smell the marijuana, the United States did not present evidence the arresting officer mentioned the smell of marijuana before searching the car, and the officer only uncovered a small amount of unburnt marijuana sealed in three layers of protective material. We then considered whether the officers had reasonable suspicion to believe Mr. Bryant had a weapon concealed in his vehicle and determined, under the totality of the circumstances, the officers did not have reasonable suspicion. The United States now asks us to reconsider and again consider the totality of the circumstances including in another evidentiary hearing where it can show the strong odor of marijuana almost three years later based on, among other things, a federal agent's detection of

marijuana after our hearing over thirty months after the search. They also ask us to change our finding of the officer's credibility. We find no clear error of law, new evidence not available at our evidentiary hearing, or the need to reconsider to prevent manifest injustice. We decline reconsidering our detailed Findings and Conclusions of Law or retracting our material credibility finding.

**I.    Background**

Around 8:30 PM on January 11, 2018, police officer Mark Restuccia pulled over Mr. Richard Bryant for driving with an inoperable headlight.[1] He approached Mr. Bryant's car. Mr. Bryant handed over his papers. Officer Restuccia and his partner Officer Nyugen stood on either side of the car. Neither mentioned smelling marijuana. For unknown reasons, Officer Restuccia demanded Mr. Bryant exit his car. Mr. Bryant refused. Officer Restuccia opened the driver's car door and grabbed Mr. Bryant by the arm. Officer Nyugen jumped in the front passenger seat and held Mr. Bryant by his left arm and shoulder. Backup officers arrived. Mr. Bryant exited his car. The officers handcuffed him and placed him in the back of their patrol car. There is no evidence either officer mentioned marijuana or the risk of a firearm. Officer Restuccia then went back to Mr. Bryant's car and searched the passenger compartment. He noticed a backpack in the backseat and opened it up.

Officer Restuccia found a firearm and ammunition in the car's console. He found crack cocaine and marijuana in two layers of plastic bags in the closed backpack.[2] The officers took Mr. Bryant to the station where Officer Restuccia made reports and gave an interview in which he cited the smell of marijuana as the justification for the warrantless search. The Commonwealth charged Mr. Bryant but dismissed the charges before trial last year. The United States decided to take up the case. Mr. Bryant moved before us to suppress the evidence

discovered in his car, arguing the search violated the Fourth Amendment.[3] The United States opposed Mr. Bryant's motion arguing: (1) Officer Restuccia had probable cause to search Mr. Bryant's car under the automobile exception because he could purportedly smell the odor of fresh marijuana emanating from the vehicle; and (2) Officer Restuccia had reasonable suspicion to "frisk" Mr. Bryant's vehicle for weapons under *Terry v. Ohio*.[4]

We held an extensive evidentiary hearing with substantial notice to the parties. We evaluated Officer Restuccia's and Officer Nyugen's testimony. We evaluated exhibits. Neither party asked to present additional evidence. Mr. Bryant's counsel specifically asked Officer Nyugen about the smell of marijuana in the car. Officer Nyugen (in his first time testifying about the traffic stop) swore he could not smell the marijuana on January 11, 2018.

We granted Mr. Bryant's motion to suppress.[5] We first determined the United States did not establish the automobile exception to the Fourth Amendment's warrant requirement by a preponderance of the evidence because several facts cast doubt on Officer Restuccia's testimony he could smell a "strong odor" of marijuana.[6] While Officer Restuccia testified he could smell marijuana from outside the driver's side window, Officer Nyugen testified he could not smell marijuana even after he entered the car and knelt on the passenger seat while they awaited backup.[7] The officers uncovered less than one ounce of marijuana, which was encased in two layers of plastic, zipped inside a backpack, and unburnt—further calling into question the possibility Officer Restuccia could smell it from outside of the car.[8] Based on this evidence—and with the United States electing not to present physical evidence or testimony corroborating Officer Restuccia's story—we determined we could not credit Officer Restuccia's testimony regarding the "strong" odor of marijuana.

We then determined Officer Restuccia did not have a basis to frisk the vehicle for weapons under *Terry v. Ohio* because he did not have reasonable suspicion based on articulable facts to believe Mr. Bryant to be armed and dangerous.[9] We noted at the outset Officer Restuccia's story as to why he searched the vehicle has been consistent over the past two years: he smelled marijuana.[10] Officer Restuccia has never characterized his search of the vehicle as a "frisk" for weapons, and when he filled out an incident report on the night of the traffic stop, he specifically answered "No" in response to the question "Vehicle Frisked?"[11] We nevertheless analyzed the totality of the circumstances to determine whether an objective officer would have reasonable suspicion of Mr. Bryant being armed and dangerous.[12] We considered Mr. Bryant's nervousness, his movements before the officers approached his vehicle, his movements after the officers approached his vehicle, and his refusal to cooperate with officers once they tried to get him to exit his car—first by ordering him out of the car and then by opening his door and grabbing his arm and pulling him.[13]

Analyzing the totality of these circumstances, we determined a reasonable officer would not have reasonable suspicion under these sworn facts.[14] We concluded Mr. Bryant's nervousness and movements before the police approach were natural responses to a traffic stop, and his movements after the stop consistent with a person becoming agitated after officers attempted to remove him from his car during a routine traffic stop.[15] We concluded the officers did not have reasonable suspicion to frisk Mr. Bryant's car as supported by our eighty-two Findings of Fact.

**II.   Analysis**

The United States asks we reconsider our October 30, 2020 Order suppressing evidence of a firearm, ammunition and narcotics seized during the January 11, 2018 search of

4

Mr. Bryant's car.[16] It argues our thirty-three page opinion did not properly address: (1) the totality of the circumstances evidences Officer Restuccia's reasonable suspicion to frisk Mr. Bryant's car; and (2) the scope of the Supreme Court's allowance to search Mr. Bryant's car under *Michigan v. Long* and its progeny. The United States further asks we retract or clarify our specific findings regarding Officer Restuccia's credibility. Mr. Bryant responds we address these issues in detail in our thirty-three-page Opinion.[17] Mr. Bryant further argues we should not retract or clarify our credibility determinations as they relate to Officers Restuccia. We do not readily find the testimony of dedicated officers unworthy of belief. We carefully considered Officer Restuccia's later claim of a "strong odor" of marijuana, as recited to us and as compared to his partner Officer Nyugen's more credible testimony of not being able to smell marijuana when he sat inside the car. We deny the United States' motion for reconsideration and we decline to clarify our findings regarding Officer Restuccia's credibility.[18]

"The purpose of a motion for reconsideration . . . is to correct manifest errors of law or fact or to present newly discovered evidence."[19] We may grant the motion only if the United States can establish: "(1) an intervening change in controlling law; (2) the availability of new evidence that was not available when we decided the [suppression motion]; or (3) the need to correct a clear error of law or fact to prevent manifest injustice."[20] "Because federal courts have a strong interest in finality of judgments, motions for reconsideration should be granted sparingly."[21] A party may not use a motion for reconsideration to raise new arguments it "could or should have been made in support of, or in opposition to, the original motion."[22] Nor can it use the motion to relitigate arguments we have already considered and fully examined.[23] The United States does not present any "intervening change in controlling law" or "new evidence" not available at the time of the suppression hearing. Rather, the United States invites us to find

we failed to consider the totality of the circumstances and misapplied *Michigan v. Long*, and thus committed a clear error of law. We decline its invitation.

### A. We properly considered the totality of the circumstances.

Despite the United States' view we "considered relevant factors in isolation . . . rather than under the totality of the circumstances," we did, in fact consider the totality of the circumstances in determining whether the officers had reasonable suspicion to frisk Mr. Bryant's car. We believe our analysis evident from our three separate descriptions of the standard as a "totality of the circumstances" test[24] and our detailed illustration of five cases in which judges facing similar facts reached different conclusions regarding whether officers had reasonable suspicion based on subtle variations in the totality of the circumstances.[25] Nonetheless, we will address the United States' concerns in greater detail here.

In ruling on Mr. Bryant's motion to suppress, we considered all the evidence presented as well as the absence of evidence. We determined the United States presented evidence establishing: two officers pulled over a Black man driving a registered, not stolen Chevrolet Impala with one inoperable headlight who reached around in his car in their spotlight before they reached the side of his car, nervously asked why they had stopped him, handed Officer Restuccia some of his paperwork, retrieved the rest of his paperwork from his glove box as the officers watched, became agitated when the officers attempted to remove him from his car, reached for the glove box while the officers stood on either side of his car, and resisted the officer's attempts to pull him out of his car by flailing his arms.

As we described in our Opinion, the lack of a credible alternative explanations consistent with the Constitution is telling. The United States *did not* present evidence establishing, for example: (1) the Cobbs Creek section of West Philadelphia was a high-crime area in 2018; (2)

6

the officers knew Mr. Bryant's criminal history; (3) the mobile data terminal search revealed a stolen or unregistered car; (4) Mr. Bryant or his vehicle matched a description provided in a tip; (5) Mr. Bryant failed to comply with the officers' request before they sought to pull him out of his car; (6) Mr. Bryant appeared to be under the influence of a substance; (7) the officers could see something suspicious from their vantage point outside the vehicle; or, perhaps most critically, (8) Officer Restuccia believed Mr. Bryant was armed and dangerous. While we do not intend the foregoing to be an exhaustive list of the types of evidence capable of tipping the scales in favor of the United States or a list of evidence necessary for a finding of reasonable suspicion, we want to illustrate how the *absence* of evidence weighed on our analysis of the totality of the circumstances.[26] Simply put, the United States did not present enough "specific and articulable facts" to allow us to find Officer Restuccia had reasonable suspicion Mr. Bryant was armed and dangerous when Officer Restuccia searched his car on January 22, 2018.[27]

### B. We properly applied *Michigan v. Long*.

The United States points to one sentence in our extensive October 30, 2020 Opinion, "Mr. Bryant's reach toward item in the glove box in the officer's view did not create reasonable suspicion to believe he had a gun in the center console," to argue we misunderstood the "permissible areas to frisk" under *Michigan v. Long*.[28] The United States misinterprets our findings. We write to clarify possible confusion.

As we found, "the Supreme Court in *Michigan v. Long* extended *Terry* to allow an officer to 'search the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden . . . if the officer possesses a reasonable belief . . . the suspect is dangerous and the suspect may gain immediate control of weapons.'"[29] In other words, *if* the

officer has reasonable suspicion, *then* the officer may search the areas of the passenger compartment of the suspect's vehicle where weapon could be placed or hidden.

We held the officers did not have reasonable suspicion to believe Mr. Bryant to be armed and dangerous, and thus could not search any area of Mr. Bryant's vehicle whatsoever, including the center console.[30] We did not hold the officers had reasonable suspicion to believe Mr. Bryant was armed and dangerous, but could only search the glovebox.

The context in which we wrote the sentence the United States identified makes our holding clear. In its opposition to Mr. Bryant's motion to suppress and at the suppression hearing, the United States argued a driver who makes reaching motions after he has already provided his license, registration, and insurance furnishes the officers with reasonable suspicion to frisk his vehicle.[31] As we explained, our research revealed judges in this Circuit take a more nuanced approach. We noted in *Colen* the driver's reach toward the center console furnished reasonable suspicion to search the passenger compartment of the vehicle where the driver: (1) quickly shut the center console prior to the officers approach; (2) did not open the console in front of the officers; (3) provided his paperwork to the officers; and (4) reached again for the center console while the officers were back in their patrol car checking his documents.[32]

We contrasted *Colen* to *Austin*, where the court found the driver's reach toward the car door did not furnish reasonable suspicion.[33] In *Austin*, the driver reached toward an area of the car door and the officers, believing he could be reaching for a weapon, grabbed his arm and opened the door.[34] Upon opening the door, the officers realized he had been reaching for a cell phone, not a weapon.[35] Judge Katz held the officers seeing the cell phone in the door dispelled any reasonable suspicion furnished by the "reaching toward the door."[36] We explained we believed Mr. Bryant's case to be more similar to *Austin* than *Colen* because Mr. Bryant

8

"reached" to the glove box—an area the officers already observed when Mr. Bryant retrieved his paperwork—while the officers stood on either side of his car, holding flashlights, with a spotlight pointed into his car.[37]  Unlike in *Colen*, the officers were not back in their patrol car when Mr. Bryant began "reaching," and Mr. Bryant did not reach towards an area blocked from their line of sight.  Rather, like in *Austin*, he reached toward an area the officers had an opportunity to observe.  With this background, we held the reach toward the glove box did not create reasonable suspicion, and thus the officers did not have a lawful basis to search Mr. Bryant's vehicle at all.  We extend our apologies for confusion the phrase "to believe he had a gun in the center console" caused, but we find this phrase, particularly read in context, does not amount to an error of law at all, let alone a clear error of law.

   C.   **We find no basis to revisit our credibility finding.**

The United States argues "a negative credibility finding is unfair to [Officer Restuccia] because after the [suppression] hearing occurred, Special Agent Richard Dalley went to the Philadelphia Police Department and located the marijuana found in [Mr. Bryant's] car" and "[d]espite the small quantity of the drug, Special Agent Dally could easily smell the marijuana, even though it was contained inside a vacuum-sealed bag and additional plastic packaging."[38] The United States further informs, "Special Agent Dalley reported that his car smelled like fresh marijuana once he put the vacuum-sealed bag into the back seat.[39]"  The United States essentially asks us to revisit our credibility determination—which we made after an extensive open court evidentiary hearing featuring the sworn testimony of three witnesses, including Special Agent Dalley—based on Special Agent Dalley's unsworn account described in a footnote to the motion for reconsideration, of a test he performed to recreate the night of January 11, 2018 over thirty months after the traffic stop and days after our suppression hearing.  This we

9

cannot do. The test is what did the officers suspect on January 11, 2018; not what a federal agent thinks in October 2020.

If, as it seems to suggest, the United States had access to the marijuana uncovered in Mr. Bryant's car, they could have sought to present it to the Court to bolster Officer Restuccia's testimony regarding its fragrancy. If transporting this evidence to the courthouse filled Special Agent Dalley's car with a "strong odor of marijuana," the United States could have sought to elicit this testimony from Special Agent Dalley at the hearing. The United States chose not to offer physical evidence or testimony corroborating Officer Restuccia's account even though Mr. Bryant's suppression motion made abundantly clear he intended to attack the credibility of evidence regarding the smell of marijuana.[40] The United States chose to offer only the testimony of Officer Restuccia and the often-directly conflicting testimony of Officer Duy Nyugen, who swore he did not smell marijuana while he knelt inside Mr. Bryant's car at the same time.

We carefully choose our credibility findings. We have no other choice of words to describe our findings as to Officer Restuccia's reasons for searching Mr. Bryant's car, his partner never having smelled the marijuana, and the relatively small amount of unburnt marijuana contained in plastic bags inside a zipped backpack. We have no basis to revisit our earlier finding.

### III. Conclusion

We deny the United States' motion for reconsideration of our October 30, 2020 Order with supporting Memorandum including Findings of Fact and Conclusions of Law.

---

[1] ECF Doc. No. 45 ¶¶ 4, 7, 10.

[2] *Id.* ¶ 78.

[3] ECF Doc. No. 28.

---

[4] ECF Doc. No. 32; 32 U.S. 1 (1968).

[5] ECF Doc. No. 45.

[6] *Id.* at 16.

[7] *Id.* at 17.

[8] *Id.*

[9] *Id.* at 17.

[10] *Id.* at 18-19.

[11] *Id.*

[12] *Id.* at 20.

[13] *Id.* at 25.

[14] *Id.* at 20.

[15] *Id.* at 25-26.

[16] While the Federal Rules of Criminal Procedure do not provide for motions for reconsideration, our Local Rule of Criminal Procedure 1.2 adopts Local Rule of Civil Procedure 7.1(g) for criminal cases. Under Rule 7.1(g), a party may file a motion for reconsideration or reargument within ten days of the entry of the judgment concerned. "Absent guidance under the criminal rules, the Court looks to the jurisprudence under Federal Rule of Civil Procedure 59(e) in considering [the] motion [for reconsideration]." *United States v. Newmark*, No. 06-447-1, 2008 WL 2165093, at *1 (E.D. Pa. 2008).

[17] ECF Doc. No. 54.

[18] *Id.*

[19] *Max's Seafood Café v. Max Quinteros,* 176 F.3d 669, 677 (3d Cir.1999); *see also United States v. Henry*, No. 06-33-01, 2008 WL 2791540, at *2 (E.D.Pa. 2008) (same).

[20] *Henry*, 2008 WL 2791540, at *2.

[21] *Id.* (quoting *Continental Casualty Co. v. Diversified Indus., Inc*., 884 F. Supp. 937, 943 (E.D.Pa.1995)).

[22] *Id.*

[23] *Id.*

[24] ECF Doc. No. 45 at 18, 22.

[25] *See id.* at 20-27.

[26] *Gov't of V.I. v. Ashby*, 45 V.I. 54, 58-59 (V.I. Terr. Ct. 2002) (considering absence of evidence in the totality of the circumstances analysis).

[27] Judge Baylson's analysis earlier this week in *United States v. Foushee*, No. 19-452, 2020 WL 6582673, at *5 (E.D.Pa. Nov. 10, 2020), presents a good example of how slight variations in the totality of the circumstances might change our analysis. In *Foushee*, officers pulled over a car with tinted windows and a broken taillight. *Id.* at *1. Unlike here, the United States in *Foushee* presented evidence the stop occurred in a high-crime area. *Id.* at *6. Before the officers' approach, the passenger of the vehicle began dipping down. Unlike here, where Officer Restuccia did not testify of a concern for his safety and neither officer testified he believed Mr. Bryant to be hiding a gun, the officer in *Foushee* testified these movements appeared consistent with hiding a gun under the seat based on his thirteen years' experience as a police officer, which made him concerned for his safety. *Id.* As in Mr. Bryant's case, the officer in *Foushee* testified the passenger acted extremely nervous. *Id.* The passenger gave him his identification, and the officer recognized him as someone who had fled a traffic stop in the past. *Id.* The passenger then attempted to eat a sandwich, but was unable to, which made the officer nervous. *Id.* Unlike in Mr. Bryant's case, where there is no evidence the officers even told Mr. Bryant why they stopped him, the officer specifically told the passenger his behavior was making him nervous and thus he was going to briefly detain him. *Id.* When the passenger exited the vehicle, the officer looked under the seat—the area the passenger had been ducking toward before the officer's approach—and saw a gun. *Id.* Unlike here, where Officer Restuccia consistently cited the smell of marijuana as his basis for conducting a full search of the car once he returned to the station, the officer in *Foushee* looked under the seat out of a concern for his safety because the passenger's conduct made him nervous. *Id.*

[28] ECF Doc. No. 53 at 7 (quoting ECF Doc. No. 45 at 26).

[29] *Id.* at 18 (quoting *Michigan v. Long*, 463 U.S. 1032 (1983)) (emphasis added).

[30] *Id.* at 27 ("We cannot find reasonable and articulated reasons for a *Terry* frisk of the car.")

[31] ECF Doc. No. 32 at 4.

[32] ECF Doc. No. 45 at 21. (quoting *United States v. Colen*, 482 F. App'x 710, 711–12 (3d Cir. 2012)).

[33] *Id.* at 24 (citing *United States v. Austin*, 269 F. Supp. 2d 629, 630 (E.D.Pa. 2003)).

[34] *Austin*, 269 F. Supp. at 630.

[35] *Id.*

[36] *Id.*

---

[37] ECF Doc. No. 45 at 26.

[38] ECF Doc. No. 53 at 2.

[39] *Id.*

[40] *See* ECF Doc. No. 28 at 11 ("The officers reported that they detected the odor of raw marijuana as they approached the Impala . . the lack of specificity renders their allegations dubious."); *id.* ("[I]n this case, it is doubtful the small amount of marijuana, contained in closed plastic baggies, within a backpack, within the passenger compartment of a vehicle, could have been smelled by officers approaching the vehicle."); *id.* at n.11 (citing and discussing Philadelphia Inquirer article *Philadelphia police are searching more cars for marijuana—but finding less of it critics say*).